May it please the Court, Igor Timofeev for petition of Victor Medina. The central issue in this appeal is whether the Board of Immigration Appeals' decision that it lacked the power to reopen Mr. Medina's prior immigration proceeding should be reversed as contrary to this Court's precedent. Mr. Medina was removed from the United States under what the Board has now held that his second simple drug possession offense constituted an aggravated felony under the immigration law, and that it made him ineligible for cancellation of removal. The U.S. Supreme Court has since clarified in Carituri Rosendo that such conviction is not an aggravated felony when it is not based on the fact of a prior conviction. When Mr. Medina sought to reopen his removal proceedings, the Board noted that under Carituri Rosendo, Mr. Medina was not an aggravated felon in immigration law, and that this decision constituted a material change in the law. The Board, however, mistakenly thought that the departure bar regulation, Section 1003.2d, precluded it from reopening Mr. Medina's removal case, because Mr. Medina had previously been removed from the United States. As the government now concedes, that conclusion is squarely contrary to this case law. This Court made clear in cases such as Reyes-Torres v. Holder, Lynn v. Gonzalez, and Coit v. Holder, that the departure bar does not prevent the Board from reopening a removal proceeding for individuals who had already been removed. This Court's precedent, therefore, mandates a reversal of the Board and a remand at least on this basis. In fact, the government concedes that the remand is appropriate, but it argues that the Fifth Circuit law may apply to Mr. Medina's request to reopen, because Mr. Medina's original removal proceedings were held in Texas. This is incorrect. Section 1552.d.2, on which the government relies, is not a conflict of law provision. It is rather a venue provision. As such, it directs a filing location for a petition for review with the Circuit Court. But once venue is proper, the Circuit Court applies its own decisional law. This circuit is the proper venue for Mr. Medina's petition, because he challenges the Board's denial of his motion to reopen, and these two denials were made in November 2010 and in February 2011. Mr. Medina filed his motions after the immigration court proceedings that were conducted in Arizona within the circuit. Moreover, the government has not objected to the venue, and it has not filed a motion to transfer this court, this case, to the Fifth Circuit. In this way, this case is entirely unlike the Treasure Maggia v. Holder, the case on which the government relies. And in fact, it is the sole authority that the government has put forward in favor of its argument that somehow the Fifth Circuit law is actually relevant here. Therefore, our position is that this circuit's law applies, and in fact, as the government concedes, the departure bar does not in fact bar the Board's immigration appeals from reopening Mr. Medina's proceedings. But even if the Fifth Circuit law is somehow relevant, the Board's decision is still in error. The Fifth Circuit's recent precedent of Garcia-Carras v. Holder, which we submitted in a 28-J letter, invalidated the departure bar regulation altogether as contrary to the governing statute. As the Fifth Circuit explained, and this conclusion is shared by other circuits, that statute, Section 1229A, C7A, permits the alien at least one motion to reopen. Therefore, the remand that the government requests will seek no useful purpose, whether under this circuit's case law or whether under the Fifth Circuit's new precedent. The Board's decision was still in error, and Mr. Medina and the Board still had the power to reopen Mr. Medina's case. We think that this Court could go even further and invalidate Mr. Medina's original removal under the gross miscarriage of justice exception to the traditional bar on collateral review. There are two independent bases on which this Court could find that standard met. First, based on the circuit's law, as it stood in 2007, Mr. Medina would have been eligible for cancellation of removal. In the 2004 decision of Ferreira v. Ashcroft, this Court held, and as the Supreme Court later explained, correctly so, that the second conviction for simple drug possession is not necessarily an aggravated felony under the immigration law. Mr. Medina seeks to collaterally challenge the propriety of his 2007 removal as the basis for his current inadmissibility to the United States. And that's the sole basis for removal in the current proceedings. Because this challenge is made in the context of a petition for review from the current removal proceedings, we believe that this Court should apply this circuit's law when evaluating this challenge. And therefore, it could find that Mr. Medina's removal indeed constitutes a gross miscarriage of justice. The second ground is, as we demonstrated in our opening brief, the immigration judge in the original removal proceeding violated Mr. Medina's statutory right to counsel. The immigration judge's refusal to grant a continuance to Mr. Medina to secure legal representation was an abuse of discretion. Because Mr. Medina demonstrated evidence of affirmative steps to secure legal representation, and his new lawyer's willingness to represent him. And he requested only 12 days' continuance. Although a showing of prejudice may not be necessary under this Court's precedent, Mr. Medina was prejudiced by the absence of legal representation. Can you straighten me out on when this miscarriage of justice argument was raised to the BIA? The, Your Honor, the miscarriage of justice is a judicial, it's a judicial construct. We, we raised. Does the BIA still have to have an opportunity to consider it? We raised, I think what we did is we raised the argument before the BIA that Mr. Medina should not have been removed in 2007, that he was not an aggravated felon under, you know, under the properly construed law. So I think what we are arguing now is, first of all, the, first of all, the board, the remand to the board is proper because the board is not, was not barred currently from reopening proceeding. But moreover, this Court can actually consider this collateral attack on his 2007 removal. I mean, we do understand that normally you cannot, you know, collateral attack a prior, you know, prior determination of the board. I think the way that this Court has offered us to do it is under this gross miscarriage exception, which is, which stems from this case, this Court's case of Ramiro Suarez. So we, we had to make to the board the argument that, in fact, the gross miscarriage of justice occurred, that he should not have been removed in 2007 at all, or at least he should have been considered for cancellation of removal because he was indeed eligible. We, we now argue that this Court can actually instruct the board to, in fact, invalidate its 2007 removal order because that order does constitute a gross miscarriage of justice. And I know that the government argues that this Court is, is prevented by the Supreme Court's decision in, in, in the Inez versus Ventura from doing so. We think, and we are going to reply brief, that Ventura really is distinguishable, that here the Court will not be making any additional fact findings. And I think this may be, you know, Judge Schroder, the way your, your question is, is directed that this Court will not be making any fact findings that the, that the board has, has not made. I mean, this Court really, because the gross miscarriage of justice is a judicial construct, will be looking at the record of Mr. Medina's 2007 removal, looking at what the circuit has said about the eligibility for his convictions. And these convictions on the record, they show that his second conviction was not premised on any kind of fact of the prior conviction. And, in fact, can make a decision that he indeed, under this, this circuit's law, was not removable at all. And then if, if, if Your Honor's permit, I, I wanted briefly to address two other issues. We also raised as a second potential basis for, for the gross miscarriage of justice the argument that in the regional immigration proceeding, the, the denied Mr. Medina's right to counsel. And what I wanted to mention in that respect is the government in its, in its response brief really offered no response to our argument. So, I mean, we would, we would even argue that it does constitute a waiver in that respect. And finally, also, we, as we argue in our briefs, we believe that the board committed legal error when it denied Mr. Medina's application for asylum without addressing the evidence of whether or not he had the well-established fear of persecution upon return to Bolivia on the account of his, his HIV status. And the government argues that, that the board's, the absence of that discussion in the board's opinion is immaterial because the immigration judge addressed that ground. We do agree that the immigration judge did address that issue in, in his decision, but we believe it is not sufficient. We, we argue that under the circuit's case law, and particularly such cases as Hosseini v. Gonzales, Harris-Medjia v. Holder, this Court said that where the board conducts its own review of the evidence, this Court will look only to the board's opinion unless the board expressly adopts the immigration judge's findings. And in this case, there was no such express adoption of the immigration judge's HIV status, as opposed to the, the, the political beliefs. So therefore, we believe that here remand is also proper on this ground. I would also argue that particularly because our position is that a remand to the board is, is required under this circuit's case law because the board has misread its own regulation, and that regulation does not prevent it from reopening, from considering a motion to reopen. We think this Court, you know, should also instruct the board to, in fact, consider whether or not misdemeaning has established a well-established fear of persecution on account of his status as an HIV-positive individual. Unless the Court has other questions, I, I will reserve my time. If we were to agree with you, excuse me, but if we were to agree with you that we're in, in the Ninth Circuit and that the board should not have relied on the departure bar, where would that get you? If you agree that the, that the board could not, should not have relied on the departure bar in a sense of feeling itself bound to not even consider, I think what the Court should, what this Court should do is do what it's done in previous cases, you know, since recently. It can remand us, it can reverse the board's decision on that, on that basis. It can remand to the board to consider whether to reopen, whether to reopen the proceedings. And, and I do just want to mention that the, particularly the government argues, well, there can also be a timeliness problem, there can be, you know, additional, additional barriers. And I think, you know, what this Court, for instance, done in, in the Lynn case, this Court said, look, the departure bar regulation does not bar the board from reopening. There may be a timeliness issue. That is an issue that the board has not addressed. That is something the board can consider and remand. I mean, we had argued that here the equitable tolling would apply, and so the board could consider the petition. I mean, I think that that is probably the, the easiest and most comfortable way for this Court to resolve the case, because although we, as I mentioned, we think that this Court can apply the gross miscarriage exception, I do realize, recognize the, you know, the appellate court's sensitivity about addressing a matter that the board and agency has not yet considered. And I think in this case, I mean, the board, again, on remand, may decide that, that it, it will indeed reopen the Mr. Medina's immigration proceedings. Thank you. Thank you, counsel. You have reserved about a little over two minutes. May it please the Court. Carol Federighi on behalf of the respondent of the government. The government agrees that the case should be remanded for the board to reconsider its decision not to entertain Mr. Medina's request for reopening of the 2007 decision. But before doing so, the court should deny the petition insofar as Mr. Medina seeks review of the board's 2010 denial of his asylum application. First, with regard to reopening, the government agrees the court should remand this case for the board to reconsider its Mr. Medina's request to reopen his 20, his 2007 removal proceedings. The board's original decision that reopening was barred by the, because of the departure bar, is no longer correct under either Fifth or Ninth Circuit case law. Under both of, under the law of both of those circuits, Mr. Medina's departure from the U.S. does not by itself bar his request to reopen. There might be, as Mr. Medina's counsel pointed out, there might be other reasons to deny the motion to reopen, but the court cannot uphold the decision of the board on a ground that the board did not rely. So the proper course is for the court to remand, for the board to consider the motion to remand in applying current law with regard to the departure bar. As Mr. Medina's counsel pointed out, the motion is untimely, which would cause a problem in both the Ninth and, in particular, also the Fifth Circuit. And so I don't want the court or Mr. Medina to be under any illusions that he will likely have unqualified success on remand. But it is up to the board to decide in the first instance both which circuit's law to apply and to judge whether the motion is timely and whether it should be excused because of, or whether, if it's untimely, whether that should be excused. In order to get around these restrictions on the motion to reopen process, Mr. Medina has attempted to ask this Court to review the prior order in the context of these proceedings. He is aware that normally the court will not entertain collateral challenges to prior orders of removal. There is some case law indicating that this could happen in the case of a gross miscarriage of justice, but that's extremely rare and does not exist in this case. Mr. Medina's argument that there's a gross miscarriage of justice in his 2007 proceedings is based on application of Ninth Circuit law, and that's there's just no justification for applying Ninth Circuit law to judge the justice afforded him in his 2007 proceedings. In 2007, he was in detention in the Fifth Circuit, so the Fifth Circuit law was applied. He might have an argument that Second Circuit law should have applied to him because that's where he had resided for his entire time in the U.S., but he had no connections to the Ninth Circuit at the time, so there's no reason to apply Ninth Circuit law. At the time of his hearing, under both Fifth and Second Circuit law, he was not eligible for cancellation of removal, because both those circuits would have considered him an aggravated felon because of his two drug possession convictions. He — it wasn't until later in Karachuri that the Supreme Court struck down that view of both — that both the Fifth and the Second were following at the time. He argues that he was denied the right to counsel in his 2007 immigration proceedings. Regardless of what happened before the immigration judge, I want to point out that he did obtain counsel to appeal the determination of his aggravated felon status to the board. He had counsel in his appeal to the board. The board did raise the issue of whether a second possession conviction is considered — should properly be considered an aggravated felony, i.e., that's the Karachuri issue that was raised on appeal to the board. The board rejected it. At that point, counsel could have sought to petition for review, but did not do so. And in his brief, he pointed out that other noncitizens had been successful after Karachuri, and that he should have been in that — the same boat as those people, but he could have been in the boat if his counsel had petitioned for review and kept his case alive, but he chose not to. So there's no — whatever deprivation of counsel there might have been at the immigration proceedings, and we don't agree that there is, in any event, that didn't prejudice him at all, because he did have counsel for his appeal to the board. The record does not compel the conclusion that Mr. Medina demonstrated past persecution or a well-founded fear of future persecution in Bolivia so as to render him eligible for asylum. Therefore, this part of the petition for review should be denied. In his brief, Mr. Medina only challenges whether the board properly considered his claim of a well-founded fear of persecution based on his HIV status. Mr. Medina doesn't challenge the remaining findings. In any event, I just want to point out those are supported by substantial evidence. In Bolivia, Mr. Medina experienced only occasional harassment by the police because of lack of identification documents, some reluctance to treat him as an HIV-positive person, and difficulty in getting his medication. These do not meet the standard for persecution, and in particular, I point out, as the IJ did, that he was more or less able to overcome these difficulties with some effort. So he, again, this does not rise to the level of persecution, this type of discrimination and harassment. So let me understand exactly what, if you're agreeing there should be a remand, but the remand is limited to what? To reconsider the motion to reopen his 2007 proceedings, but not to reconsider the asylum application raised in the 2010 proceedings. Okay. So as far as the, what Mr. Medina is raising in his brief with regard to the asylum claim, he's saying the board did not address whether he had a well-founded fear based on his HIV status. The board did address this claim. His claim was that he, his only claim with regard to his HIV status is that he would have difficulty getting medication in Bolivia because he was denied coverage by the state insurance scheme and had to pay for it, and that was difficult for him. This was the focus both in his appeal brief and in his testimony. The immigration judge held that simply difficulty in getting medication because you can't pay for it is not persecution. The board specifically affirmed this. The board did say it was not persecution to face discrimination and delay in the provision of medical and dental care. Admittedly, this use of the word was seems to indicate, suggests that maybe they were just referring to his claims of past persecution. But this is in a paragraph where the board was addressing both the past and the future persecution findings of the IJ. Mr. Medina's claims with regard to past and future persecution on the basis of HIV status were based on the same argument, that he was going to have difficulty in getting his medication. The board's finding that it's not persecution to face discrimination in the provision of medical care applies to both the past and future persecution arguments. And so the fact that the board might have been a bit sloppy and used just the past tense in that finding does not mean that the board did not address the well-founded fear claim. The board's reasoning is discernible in the decision. The board did address the finding. In any event, there's Mr. Medina doesn't raise any claim that the evidence does not support a finding that he would not experience persecution in the future on the basis of his HIV status, that he would experience something more than just this difficulty in obtaining medication because he was not covered by the State insurance scheme. If there are no further questions, again, we agree that. Sotomayor, I'm sorry to be a little slow here, but does that mean that you're agreeing that he can argue it should be reopened in order to get the benefit of carotid resentment? Yes. Yes. He can argue that. I mean, the board should consider that on remand, yes, to see whether he's eligible then for cancellation of removal as to, yeah. So. Thank you, Ms. Peterman. No further questions. Thank you. Mr. Timofeyev. Thank you, Judge Bybee. Just a few points in rebuttal. First of all, we're certainly glad and will accept the government's agreement to, you know, to accept remand for reconsideration in light of potential reopening for carotid resentment. I just wanted to mention that we do think that the Ninth Circuit law is the one that will have to apply, because, again, he's Mr. Medina's motions. Mr. Medina filed petitions to reopen his to, based on his motions to reopen, which was filed within the Ninth Circuit. So we think that really it is this Circuit's law governs, but under the Fifth Circuit's recent case law, we do think it's immaterial. In fact, the Fifth Circuit has gone further and actually struck down the departure bar regulation.  And what is happening on collateral review is that an individual attacks in a current proceeding, he collateral attacks his prior, you know, prior determination, C determination. So we think that this Circuit really, that's the basis for this Circuit to consider whether or not under its laws that stood in 2007, Mr. Medina would have, you know. How could we do that? If there were conflict in the circuits, that means then that you should quickly get into another circuit, ask them to review the Fifth Circuit's determination in his case on the basis of Ninth Circuit law rather than Fifth Circuit law. That's a mess, isn't it? I think, Judge Breyer, there would be, first of all, an individual would not be able to quickly get into another circuit because he, under the Section 1252, he would have to file in the circuit where his immigration proceedings, you know, took place. He would actually have to leave, be deported from the country, try to reenter the country in a different territory, and then to get into that circuit. So I think that's, I think those would be the barriers. I would just raise, but I do want to acknowledge your concern. I just want to raise, you know, another issue. I think doing it the other way risks a situation where, for instance, this Ninth Circuit would be divining what the Fifth Circuit law in fact was. For instance, in the recent decision, the Garcia-Carreras decision, the Fifth Circuit said, look, there was this misperception that our two prior precedents, Avalos and Navarro, in fact have upheld the departure bar, and they said no. Navarro's case has really upheld the departure bar. We can still invalidate it. So I think, I think the contrary argument I would put is that it would be, it would be difficult for a court to kind of apply, try to apply and divine the other circuit law when that one may still be developing. I have another point, but I see that my time is up, so. Roberts. I think we understand the argument. Thank you. We thank both counsel for the argument. Mr. Timofeyev, you are here representing Pro Bono, is that correct? And the Court thanks you for your service to the Court. Thank you very much. The case was well argued by both sides and well briefed. That concludes the calendar for today, and the Court stands in recess.
judges: Battaglia, Schroeder, Bybee